UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Kimberly Parrott, *Plaintiff,* *v.* Karen Krasicky, *Defendant.* | Civil No. 3: 12cv820 (JBA)<br><br>July 2, 2013 |

**RULING ON MOTION TO DISMISS**

Plaintiff, Police Officer Kimberly Parrott, brought this action against the Plymouth Police Department Chief Karen Krasicky in both her official and individual capacities pursuant to 42 U.S.C. § 1983, alleging violations of her Fourteenth Amendment right to be free from discrimination on the basis of gender.  Defendant moves [Doc. # 19] to dismiss Plaintiff's Complaint [Doc. # 1] in its entirety for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Alternatively, Defendant moves to dismiss on the basis of qualified immunity, the statute of limitations, and failure to state a claim upon which the requested relief of punitive damages can be granted.[1]  For the reasons that follow,

---

[1] Chief Krasicky also moves to dismiss "those aspects of the plaintiff's complaint" which allege discriminatory conduct on or before June 4, 2009 on the ground that claims based on the conduct are time barred.  (Def. Mem. Supp. [Doc. # 19–1] at 16).  The statute of limitations for § 1983 claims, borrowed from the general statute of limitations for personal injury actions, is three years.  *See* Conn. Gen. Stat. § 52-577; *Loonsbury v. Jeffries*, 25 F.3d 131, 132 (2d Cir. 1994).  Though the Complaint mentions "a continuous course of conduct beginning in May 2009 and continuing to the present" (Compl. ¶ 6), the earliest non-conclusory factual allegation of discriminatory conduct did not occur until late June 2009 (*id.* ¶ 7).  Thus, because the Court will not accept "legal conclusion[s] couched as factual allegation[s]," *see Iqbal*, 556 U.S. at 678, the Court will disregard any allegations pertaining to conduct occurring before June 4, 2009.  As such, Defendant's argument for dismissal based on statute of limitations grounds is moot.

Defendant's motion to dismiss will be denied as to the Fourteenth Amendment claim, qualified immunity, and the request for punitive damages against Defendant in her individual capacity.  The motion to dismiss will be granted as to punitive damages against Defendant in her official capacity. [2]

## I.      Factual Allegations

Ms. Parrott is a female officer in the Plymouth Police Department in Terryville, Connecticut.  (Compl. ¶ 3.)  Defendant Karen Krasicky is the chief of the Plymouth Police Department.  (*Id.* ¶ 4.)  Unlike two male officers in the department who were "promptly" notified of complaints filed against them, Officer Parrott was not notified of a complaint against her until approximately six months after it was filed. (*Id.* ¶ 7.)  The same male officers were placed on paid administrative leave while the complaints against them were investigated, while Officer Parrott was required to continue working without any paid administrative leave.  (*Id.*)  Further, Chief Krasicky has "never [ ] questioned the eligibility of male officers before granting their requests for time off" but on March 4, 2011 Chief Krasicky questioned Officer Parrott's eligibility for time off.  (*Id.* ¶ 8.)  Finally, the Police Chief repeatedly refers to Plaintiff as "that chick cop" in conversations within police headquarters and to Plaintiff's superior officers.  (*Id.* ¶ 9.)

---

[2] Chief Krasicky argues that the Court should not consider the plaintiff's brief in opposition [Doc. # 20] because it was three days late.  (Def.'s Reply [Doc. # 22] at 1, 2). The cases and Local Rule 7(b) cited by the defendant do not preclude the Court's consideration of the plaintiff's brief because they concern the timeliness of motions, not briefs.  (*Id.*)  Thus, despite Plaintiff's slight tardiness, the Court will consider Plaintiff's opposition briefing.

II.     **Discussion**[3]

       **A. Equal Protection Claim**

Chief Krasicky moves to dismiss on the basis that Officer Parrott has failed to sufficiently allege a violation of a Fourteenth Amendment right to be free from discrimination on the basis of gender and on the ground that Officer Parrott has failed to sufficiently allege a hostile work environment claim under Title VII. (Def.'s Mem. Supp. at 4–5.)  Although, Officer Parrott is not bringing a Title VII claim but rather a § 1983 claim for gender discrimination in violation of the Equal Protection Clause (Pl.'s Opp'n at 1; Compl. ¶ 10), the Court will consider Plaintiff's single equal protection claim under the two asserted theories of disparate treatment and gender-based hostile work environment by the same standard as employment discrimination claims brought under Title VII.  *See Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)*; see also Ruiz v. Cnty of Rockland,* 609 F.3d 486, 491–92 (2d Cir. 2010).

To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege the violation of a right secured by the Constitution and laws of the United States and (2) show that the alleged deprivation was committed by a person acting under color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Defendant concedes that Plaintiff properly alleged that Chief Krasicky was acting under color of state law.  (Def.'s Mem. Supp. at 5.)  The remaining issue is whether Parrott has

---

[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Detailed allegations are not required but a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

alleged a plausible violation of a right secured by the Constitution and laws of the United

States.

### 1. Disparate Treatment

The "burden of establishing a prima facie case of disparate treatment is not

onerous," but requires the plaintiff to have: (1) been a member of a protected class, (2)

performed her job adequately, (3) suffered an adverse employment action, and (4)

suffered the adverse employment action under conditions giving rise to an inference of

discrimination.  *Tex. Dep. of Com. Affairs v. Burdine*, 450 U.S. 248, 255 (1981); *Demoret*,

451 F.3d at 151.  Chief Krasicky concedes the first element but disputes that Plaintiff has

plausibly alleged facts to satisfy prongs (2), (3), and (4).

Contrary to Chief Krasicky's assertion, Officer Parrott has alleged adequate job

performance.  To satisfy the second prong, a plaintiff is only required to show possession

of the basic qualifications for the job, *De La Cruz v. N.Y.C. Human Res. Admin. Dep't of*

*Soc. Serv.*, 82 F.3d 16, 19 (2d Cir. 1996), and the allegation that Parrott is employed as an

officer with the police department plausibly shows that she has the basic qualifications to

be an officer.  *Id.*; *see also Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978).

Chief Krasicky recognizes that the third prong, an adverse employment action,

may be satisfied by "a material loss of benefits."   (Def.'s Mem. Supp. at 11) (citing

*Demoret*, 451 F.3d at 151).  However, "other indices . . . unique to a particular situation"

also may be used.  *Demoret,* 451 F.3d at 151 (quoting *Fairbrother v. Morrison*, 412 F.3d

39, 56 (2d Cir. 2005)).  Here, as an "adverse employment action," Plaintiff alleges more

than just delayed notification of a single complaint against her—which alone would likely

be insufficient to plausibly constitute an adverse employment action.  Rather, Officer

Parrott also claims that, unlike male officers, she did not receive paid leave during the

investigation of the complaint against her.  (Compl. ¶ 7.)  That allegation is at least

plausibly an adverse employment action, because denial of paid leave while under

investigation, as was given to the male officers, may be a "materially adverse change in the

terms or conditions of employment [that] is more disruptive than a mere inconvenience

or an alteration of job responsibilities."  *Demoret*, 451 F.3d at 151 (internal citations

omitted).  For example, paid leave allows one time and opportunity to defend against a

complaint without suffering income loss or the interference from one's daily

responsibilities and concerns as an active officer.  Whether this will be borne out on a

fully developed record remains to be seen but Officer Parrott has pleaded sufficient facts

to plausibly establish the third prong of her prima facie case.  *See Iqbal*, 556 U.S. at 678

("The plausibility standard is not akin to a "probability requirement," but it asks for more

than a sheer possibility").

Chief Krasicky argues that Officer Parrott fails to satisfy the fourth prong because

she has not established an inference of discrimination.  (Def.'s Mem. Supp. at 12–13.)

Officer Parrott may satisfy this prong by pleading "circumstances surrounding the

adverse employment actions . . . giv[ing] rise to an inference of gender discrimination."

*Demoret*, 451 F.3d at 152.  She alleges that Chief Krasicky denied her administrative leave

afforded to male officers under substantially identical conditions (Compl. ¶ 7), that Chief

Krasicky "has never questioned the eligibility of male officers before granting their

requests for time off," but repeatedly questioned Plaintiff's eligibility (*id.* ¶ 8), and that Chief Krasicky "repeatedly refers" to her as "chick cop" but never uses "sexually-degrading words to characterize male officers" (*id.* ¶ 9).  These allegations are sufficient to establish an inference of discrimination because evidence of this differential treatment coupled with the use of this gender-based, derogatory description by a police chief to refer to a female officer could connote the chief's inferior view of Plaintiff in a traditionally male position.

Chief Krasicky also argues that the fourth prong is not met because Officer Parrott has not alleged disparate treatment compared to similarly situated employees.  (Def.'s Mem. Supp. at 13.)  To show disparate treatment, the comparators "must have a situation sufficiently similar . . . to support at least a minimal inference that the difference of treatment may be attributable to discrimination."  *McGuiness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).  The Second Circuit has concluded that a white woman was similarly situated to a black man when both were terminated while serving in the same administrative group, s*ee id.*, but a female employee was not similarly situated to male employees when they had no supervisor or alleged misconduct in common.  *Shumway v. United Parcel Servs., Inc.*, 118 F.3d 60, 65 (2d Cir. 1997).  While a developed factual record may show dissimilarities refuting claimed commonality, at this stage Officer Parrott has met the minimal burden of pleading that she was similarly situated to other male officers in the department who received complaints during the same time period but were treated more favorably.  *See McGuiness,* 263 F.3d at 53.

*2. Hostile Work Environment*

To state a claim of gender discrimination based on a hostile work environment, the plaintiff must allege disparate treatment based on gender that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Pucino v. Verizon Commc'ns, Inc.*, 618 F.3d 112, 117 (2d Cir. 2010) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).[4]  Courts consider the conduct alleged in terms of frequency, severity, its physical, threatening, or humiliating characteristics, and whether the conduct unreasonably interferes with work performance, which generally connotes a fact intensive inquiry.  *Id.* at 119.

Defendant relies on *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70 (2d Cir. 2010) for the proposition that words such as "chickies" are too trivial to contribute to a Title VII hostile work environment.  (Def.'s Mem. Supp. at 8.)  However, *McGullam* was decided on summary judgment with the benefit of a full record, and is further distinguished because the use of the word "chickies" by an employee and not directed at the plaintiff stands in sharp contrast to the allegations about Defendant, who is Plaintiff's superior and the chief of police, referring "repeatedly" to Plaintiff, one of her police officers, in police headquarters, as "chick cop." *McGullam*, 609 F.3d at 73–74, 76; (Compl. ¶ 9).

Whether Defendant used "chick cop" to refer to other female officers but not Officer Parrott specifically, its professionally derogatory impact could plausibly contribute to a hostile work environment because it could connote a lesser status and lead

---

[4] In *Pucino*, disparately harsh working conditions, the denial of the use of tools, and verbal attacks such as "bitch" were sufficient to defeat a motion for summary judgment as to disparate treatment.  *Id.*

to the conclusion that the differential treatment she experienced was because of her gender.[5] *See Kelly v. Howard I. Shapiro & Assocs. Consulting Engn'rs, P.C.*, No. 12–3489–cv, 2013 WL 1776646, at \*3 (2d Cir. Apr. 26, 2013) ("[I]t is axiomatic that in order to establish a sex-based hostile work environment . . . a plaintiff must demonstrate that the conduct occurred because of her sex").  In any event, the use of "chick cop" by a police chief to refer to a female officer in the context alleged by Plaintiff cannot be said at this stage to be trivial as a matter of law.

Applying the *Pucino* criteria—given the continuous conduct by Chief Krasicky producing Plaintiff's emotional distress and humiliation (Compl. ¶¶ 7, 8, 9, 11), it is plausible that having to work under such circumstances while under investigation could alter one's working conditions and interfere with one's work performance.  Accordingly, Defendant's motion to dismiss the hostile work environment theory of Plaintiff's equal protection claim will be denied.

### B. Qualified Immunity

Defendant also moves for dismissal on the basis of qualified immunity.  Qualified immunity protects government officials from civil trials when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person

---

[5] Chief Krasicky argues that "the *few* instances cited by plaintiff that she was not notified of a complaint against her, that she was questioned about eligibility for leave and is referenced by her female police chief as a 'chick cop' are insufficient to establish a severe *and* pervasive hostile environment for § 1983 liability." (Def.'s Mem. Supp. at 7) (emphasis added).   A plaintiff does not need to recount each and every instance in order to establish pervasiveness at summary judgment, much less to survive a motion to dismiss.  *See Pucino*, 618 F.3d at 119–20.  Likewise, a plaintiff need not "show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Id.* at 119.

would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  Thus, qualified immunity protects a defendant if "(1) his conduct does not violate a clearly established constitutional right, or (2) it was objectively reasonable for the officer to believe his conduct did not violate a clearly established constitutional right."  *Hartline v. Gallo,* 546 F.3d 95, 102 (2d Cir. 2008) (internal quotations and citations omitted).  Contrary to Defendant's assertion, "the judges of the district courts . . . [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

At the time of the conduct at issue, it was clearly established that "[i]ndividuals have a clear right . . . to be free from discrimination on the basis of sex in public employment," *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 118 (2d Cir. 2004), and Plaintiff, as discussed above, plausibly claims that Defendant's conduct violated her Equal Protection rights.  (*See* Compl. ¶ 10).  Because it is not objectively reasonable for a police chief to believe that treating similarly situated officers differently on account of gender would not violate the clearly established legal right to be free from discrimination, Defendant has not shown entitlement to qualified immunity at this preliminary stage with no factual record to consider.

### C. Punitive Damages

Finally, Chief Krasicky moves to dismiss the plaintiff's claims for punitive damages in the defendant's official and individual capacities.  (Def.'s Mem. Supp. at 17.) Plaintiff concedes that she may pursue punitive damages against Defendant only in her individual capacity.  (Pl.'s Opp'n at 7.)  Thus, the motion to dismiss as to the punitive

damages claim against the defendant in her official capacity will be granted.  *See Ivani*

*Contracting Corp. v. N.Y.C.*, 103 F.3d 257, 262 (2d Cir. 1997) (holding that an officer sued

in his official capacity enjoys the same immunities from punitive damages as the city).

Though Officer Parrott does not offer any analysis for allowing the claims of punitive

damages against Chief Krasicky in her individual capacity, the motion to dismiss as to

punitive damages against Chief Krasicky in her individual capacity will be denied.

"Punitive damages are available in a § 1983 action 'when the defendant's conduct

is shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federally protected rights of others.'" *Lee v. Edwards,* 101 F.3d 805, 808

(2d Cir. 1996) (quoting *Wade*, 461 U.S. 30, 56 (1983)); *but see Ngo v. Reno Hilton Resort*

*Corp.,* 140 F.3d 1299, 1303 (9th Cir. 1998) (holding that punitive damages for civil rights

violations require more than the threshold level of intent as articulated in *Wade*).

Chief Krasicky offers three cases to show that the facts pleaded are insufficient to

state a claim for punitive damages.  (Def. Mem. Supp. at 19.)  However, each of these

cases was decided at the summary judgment stage on a full record.  *See e.g., Farias v.*

*Instructional Sys.*, 259 F.3d 91, 102 (2d Cir. 2001) (affirming district court's grant of

summary judgment denying punitive damages because the plaintiff did not "present

evidence . . . from which an inference of malice or reckless indifference could be drawn").

This issue should be decided on a full record because the alleged treatment of Plaintiff by

Chief Krasicky is not outside all plausible inference of reckless indifference to Plaintiff's

rights.  Accordingly, the motion to dismiss as to punitive damages against Defendant in her individual capacity will be denied.

### III. Conclusion

For the reasons discussed above, the motion to dismiss is DENIED as to Plaintiff's equal protection claim and request for punitive damages against Defendant in her individual capacity, and is GRANTED as to Plaintiff's request for punitive damages against Defendant in her official capacity.

IT IS SO ORDERED.

           /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 2nd day of July, 2013.