UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY PARROTT,<br>    *Plaintiff,*<br>      *v.*<br>KAREN KRASICKY,<br>    *Defendant.* | Civil No. 3:12cv820 (JBA)<br><br>May 27, 2014 |

**RULING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Police Officer Kimberly Parrott, brought this action against the Plymouth Police Chief Karen Krasicky in both her official and individual capacities pursuant to 42 U.S.C. § 1983, alleging violations of her Fourteenth Amendment right to be free from discrimination on the basis of gender.

Defendant moves [Doc. # 45] for summary judgment on all counts in the Complaint. For the reasons that follow, Defendant's motion is granted.

**I.      Factual Background**

Plaintiff has been a police officer in the Plymouth Police Department in Terryville, Connecticut since July 2002. (Parrott Dep. Tr., Ex. 1 to Def.'s Loc. R. 56(a)1 Stmt. [Doc. # 45-2] at 32.) Defendant Karen Krasicky has been Chief of the Plymouth Police Department since April 2005. (Krasicky Aff. ¶ 2, Ex. 2 to Def.'s 56(a)1 Stmt.) Aside from Chief Krasicky, Officer Parrott is the only female police officer in the Department. (Ugliarolo Aff., Ex. 3 to Pl.'s Loc. R. 56(a)2 Stmt. [Doc. # 55-1] ¶ 4.)

In November 2009, Officer Parrott was subject to an internal investigation for alleged off-duty misconduct and was required to continue working while this investigation unfolded rather than being placed on paid administrative leave. She claims

that three similarly situated male officers who were being investigated for misconduct were placed on administrative leave while being investigated, allowing them to prepare their defenses while continuing to receive pay and without having to face the distraction of continuing to work their shifts.[1]  (Parrott Dep. Tr. 86.)

Officer Parrott contends that Defendant repeatedly referred to her as "that chick cop" outside of her presence, corroborating the gender-based connotation for the alleged disparate use of paid administrative leave.  (*Id*. at 105.)  Officer Parrott submitted an affidavit from Sgt. Ugliarolo, who retired from the Plymouth Police Department in April 2011, in which he stated that he "personally heard Chief Krasicky refer to Officer Parrott as 'chic[k] cop' on more than one occasion," although Sgt. Ugliarolo does not provide any further details about these incidents.  (Ugliarolo Aff. ¶ 3.)  While the context in which these comments were allegedly made is unclear, Officer Parrott testified that Chief Krasicky made these comments sometime between 2007 and 2010.  (Parrott Dep. Tr. at 108.)  At oral argument, counsel for Officer Parrott confirmed that she was not pursuing a hostile work environment claim but contends that the disparate treatment regarding

---

[1] These three officers are John D'Aniello, Paul Superant, and Damien Bilotto. (Pl.'s Am. Response to Def.'s First Interrogatories, Ex. 1 to Def.'s Reply [Doc. # 59-1] at 2–3.)  Chief Krasicky placed Officer D'Aniello on administrative leave after she learned that he was "depressed and possibly wanted to harm himself" and because Officer Parrott had reported on-duty interactions with him that made her uncomfortable after she ended their non-romantic social relationship.  (Krasicky Aff. ¶ 22.)  The investigations of Officers Superant and Bilotto were both criminal in nature and led by outside law enforcement agencies.  In both cases, once the criminal charges were dropped against the officers, Chief Krasicky returned them to active duty.  (*Id*. ¶¶ 23–24.)

paid administrative leave coupled with the "chick cop" comments support an inference of gender-based discriminatory disparate treatment.[2]

The internal investigation underlying Officer Parrott's claimed denial of paid administrative leave arose from the fallout of an "on and off" romantic relationship that she had with Juan Maldonado, a Connecticut State Trooper, from September 2006 through May 2009.  (*See* Arbitration Ruling, Town of Plymouth & Plymouth Police Union ("Arbitration Ruling"), Ex. 5 to Def.'s 56(a)1 Stmt. at 4.)  In November 2009, Chief Krasicky initiated an internal investigation of Officer Parrott for allegedly filing a false complaint against Mr. Maldonado with the Connecticut State Police, for vandalism to his property, harassment of his family, and unlawfully accessing motor vehicle registration records in a state database.  (*Id.* at 8.)  The allegations were substantiated in part, and Chief Krasicky suspended Officer Parrott for ninety day, which a state arbitrator affirmed in part, reducing the suspension to fifty-five days.[3]  (*Id.* at 18.)

---

[2] At oral argument, Plaintiff also confirmed that she was not pursuing claims related to notification of the investigation, the canine handler position, and her eligibility for "bonus days off."

[3] In her opposition to summary judgment, Officer Parrott contended for the first time that her 90-day suspension was an adverse employment action.  (Pl.'s Opp'n [Doc. # 55] at 8.)   Generally, "courts will not consider, on a motion for summary judgment, allegations that were not pleaded in the Complaint and raised for the first time in opposition to a motion for summary judgment." *Flynn v. New York State Div. of Parole*, 620 F. Supp. 2d 463, 485 n.28 (S.D.N.Y. 2009).  Plaintiff never pleaded her suspension as an adverse employment action in the Complaint and did not cite it in response to Interrogatory Number 2 requesting that Plaintiff "[s]tate all facts and documents in support" of her allegations of disparate treatment.  (Pl.'s Am. Response to Def.'s First Interrogatories.)   Absent any showing of why this claim was not asserted before the summary judgment motion was filed, this claimed adverse action will not be considered.

**II.     Discussion**[4]

Officer Parrott's claim under 42 U.S.C. § 1983 for gender-based discrimination is analyzed under the same standard as disparate treatment employment discrimination claims brought under Title VII.  *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) ("Both Mr. Ruiz's Title VII claims and his claims for race and national origin discrimination under Sections 1981 and 1983 are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*.").  The "burden of establishing a prima facie case of disparate treatment is not onerous," but requires the plaintiff to have: (1) been a member of a protected class, (2) performed her job adequately, (3) suffered an adverse employment action, and (4) suffered the adverse employment action under conditions giving rise to an inference of discrimination.  *Tex. Dep. of Com. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

---

[4] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted).  "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record.  Fed. R. Civ. P. 56(c).

### 1. Adverse Employment Action

Defendant has not disputed the first two elements of Plaintiff's prima facie case, but takes aim at the sufficiency of the third element, maintaining that not putting Officer Parrott on paid administrative leave during the internal investigation of her alleged conduct vis-à-vis Mr. Maldonado did not constitute an adverse employment action. (Def.'s Mem. Supp. [Doc. # 53] at 6.)

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (internal citations and quotation marks omitted) (alterations in original).

The Court noted in its Ruling on Defendant's Motion to Dismiss [Doc. # 33], that being denied paid leave under the circumstances alleged "is at least plausibly an adverse employment action," because "paid leave allows one time and opportunity to defend against a complaint without suffering income loss or the interference from one's daily responsibilities and concerns as an active officer," awaiting a fully developed record to see if the action could be proved to be materially adverse. (*Id.* at 5.) Notwithstanding the

opportunity to develop this record, Officer Parrott has not adduced any evidence that under the circumstances the denial of paid leave was an adverse employment action.[5]

Officer Parrott offers no evidence that she ever requested to be placed on paid administrative leave or that the investigation was interfering with her duties in any way or that her ability to defend herself in the investigation, which led to her suspension, was compromised by being on duty.  (*See* Krasicky Aff. ¶ 21 ("Officer Parrott never informed me that the investigation was interfering with her ability to perform her police duties."); Pl.'s 56(a)2 Stmt. ¶ 21 (admitting the facts asserted in Krasicky Aff. ¶ 21).)  In fact, Officer Parrott acknowledged that being placed on paid administrative leave could be considered "disciplinary in nature," and precludes an officer from earning overtime payments. (Parrott Dep. Tr. at 131; *see also* Krasicky Aff. ¶ 21 ("I consider paid administrative leave to be somewhat punitive in nature and I wanted Officer Parrott to remain active with the Department and be eligible for overtime opportunities.").)

At oral argument, Plaintiff's counsel could cite no case law in support of the argument that not being placed on administrative leave was an adverse employment action.  Accordingly, Officer Parrott has not demonstrated that being kept on active duty during the investigation could be proved to be an adverse employment action and thus

---

[5] In the converse situation, the Second Circuit has held that *placing* an employee on paid administrative leave during the pendency of an investigation is not an adverse employment action, because "an employee does not suffer a materially adverse change in the terms and conditions of employment where the employer merely enforces its preexisting disciplinary policies in a reasonable manner."  *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006).

Plaintiff has not met her burden of establishing a prima facie case of gender discrimination.

### III.	Conclusion

For the reasons set forth above, Defendant's Motion [Doc. # 45] for Summary Judgment is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 27th day of May, 2014.